37 C.C.P.A. (Patents)

**Application of HITTSON.**

**Patent Appeal No. 5648.**

United States Court of Customs and Patent Appeals.

April 3, 1950.

Harker H. Hittson, Columbus, Ohio, pro se.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Judge.

In this appeal we are called upon to review a decision of the Board of Appeals of the United States Patent Office, affirming decisions of the Primary Examiners, rejecting all of the claims of an application alleging new and useful improvements in a Road Grader. Claims 1 to 7, inclusive, 9, 12 to 17, inclusive, 19, 21 to 24, inclusive, and 36 to 44, inclusive, were finally rejected by the Primary Examiner of Division 4, which is concerned among other things with Power Driven Conveyors, and claims 25, 26 and 29 to 35, inclusive, were finally rejected by the Primary Examiner of Division 47, which is concerned with Motor Vehicles; Land Vehicles (part); Fluid Pressure Brakes.

The examiner of Division 4 rejected the claims before him as unpatentable over the prior art cited by him and on other grounds which will hereinafter be set forth.

The examiner of Division 47 based his rejection of claims 33, 34 and 35 on the grounds of misjoinder, pointing out that a requirement for division between the group of claims, 25, 26 and 29 to 32, inclusive, and the group of claims, 33, 34 and 35, had been submitted to and approved by the Examiner of Classification, such approval being subject to the non-allowance of any claim covering the combination of a vehicle possessing road grading means and vehicle traction wheel driving, steering or leaning means. The examiner stated in his decision that appellant elected to prosecute the claims of the first group, retaining the claims of the second group under the provisions of old rule 42, Rules of the Patent Office, 35 U.S.C.A.Appendix. The elected claims were rejected as unpatentable over the prior art.

The cited prior art appears as follows:

| | | |
|---|---|---|
| Pfouts | 810,881 | January 23, 1906. |
| Ledwinka | 849,146 | April 2, 1907. |
| Weaver (French) | 375,113 | May 6, 1907. |
| Eisner | 1,026,662 | May 21, 1912. |
| Smith | 1,112,663 | October 6, 1914. |
| Norton | 1,157,415 | October 19, 1915. |
| Brinton | 1,313,937 | August 26, 1919. |
| Dean | 1,765,969 | June 24, 1930. |
| Dean | 1,844,058 | February 9, 1932. |
| Wells et al. | 1,868,648 | July 26, 1932. |
| Roche | 1,874,604 | August 30, 1932. |
| Adams | 1,977,033 | October 16, 1934. |
| Wilson et al. | 2,195,607 | April 2, 1940. |
| Sheridan | 2,228,411 | January 14, 1941. |
| Kerber | 2,238,389 | April 15, 1941. |
| Lee et al. | 2,258,328 | October 7, 1941. |
| Altemus | 2,261,821 | November 4, 1941. |

"Adams Motor Grader—No. 201," described in Advertising Circular Form 4119, November 25, 1941.

Claims 3, 15, 25 and 33 were properly deemed by the board to be representative of the subject matter of the involved claims and read as follows:

"3. A road grader having forward and rearward wheels, a frame extending between said forward and rearward wheels, road grading means attached to said frame,

and separate drive motors for driving each of said wheels, each motor being located adjacent the wheel it drives.

"15. A road grader including a frame, road grading mechanism on said frame, traction wheels connected to said frame, means mounting said traction wheels for adjustable leaning about generally horizontal axes and steering about generally upright axes, means for adjusting said wheels about said axes and holding them in adjusted positions, and power means for driving said wheels including an individual motor for each wheel mounted to swing about each of said axes when said wheels are adjusted for steering and leaning.

"25. A road grader including a frame, traction wheels on said frame, motor means for propelling said wheels including individual motors carried by each wheel, means for steering said wheels, and means for variably and simultaneously leaning both of said wheels about generally horizontal axes.

"33. A vehicle including a main frame, front steering and traction wheels, one on each side of said main frame, rear steering and traction wheels, one on each side of said main frame, means on said vehicle for steering said steering wheels, a separate driving motor for each of said wheels, a source of power for said motors, and means connecting the motor of one of said front wheels on one side of said vehicle in series with the motor of one of said rear wheels on the other side of said vehicle and the motor of the other front wheel in series with the motor of the other rear wheel, and the two front wheel motors and the two rear wheel motors in parallel."

The application relates to a self powered road grader. The grading means disclosed are conventional, comprising means for raising, lowering and laterally adjusting the scraper blade, and means for holding the blade in a "bank sloping" position at the side of the grader. The main frame, as is conventional, arches upwardly above the blade so that the latter may be moved to the high bank sloping position. Individual driving motors of the rotary hydraulic type are provided for each wheel and are so mounted that they move therewith

during the steering or leaning movement thereof. The wheels are steered and leaned by means of hydraulic motors.

The Wilson et al. patent relates to self-propelled road machines or motor graders. It discloses a type of device in which all of the wheels are steerable and power driven. It is stated that, "With this invention, the operator's station is able to control all the movements of the blade, especially the side shifting of the blade on its supporting means, without changing the angular relation of the blade to the road, and to independently steer the steerable front and rear power driven wheels in the same direction or in opposite direction."

The Dean patent, 1,765,969, relates to a road scraper construction and particularly to an adjustable scraper which may be attached to the chassis of a motor truck.

The Kerber patent also relates to the providing of a scraper blade attachment readily fastenable to an industrial truck for the purpose of operating the scraper blade on a road.

The Wells et al. patent discloses a power driven road working machine comprising driving means for both front and rear wheels and steerable front wheels. The front steerable wheels are not leanable and the rear wheels are not steerable.

The Dean patent, 1,844,058, relates to a hydraulically operated road scraper. It discloses the conventional cross beam which carries the scraping blade, pivotally connected thereto. It is said that one of the advantages of the device resides in a novel means, consisting of a double set of cylinders and pistons for turning the cross beam. By such means the patentee states he is able to obtain a proper turning movement on the cross beam regardless of its angular position.

The Eisner patent relates to control of vehicle driving-wheels. One of its objects is to provide a construction permitting the equal driving of wheels on opposite sides of a vehicle or a slower driving of them on either side so as to obtain a differential action in turning. The device of the patent shows that a motor is directly connected to each wheel and that it is preferred

to employ a fluid as a motor driving medium and fluid motors.

The Norton patent relates to fluid-power-transmitting apparatus for vehicles. A fluid operated motor is disclosed for each wheel.

The Adams patent relates to hydraulic propulsion of vehicles, and discloses individual rotary fluid motors for such propulsion of vehicles.

The Lee et al. patent relates to a self-powered wheel primarily designed for use on mine trucks. It discloses individual electric motors mounted on the wheel stub-axle assemblies and geared to the wheels for propulsion at a desired speed.

The Adams Motor Grader-No. 201 reference discloses a self-propelled road grader, the frame of which is arched upwardly and a grader blade adjusting mechanism. The frame and blade means are very similar to that disclosed by appellant. The front wheels of the device are both steerable and leanable. The rear wheels are the only drive wheels. They are neither steerable nor leanable.

Claims 1 to 7, inclusive, 9, 12 to 15, inclusive, 17, 19, 21 to 24, inclusive, and 36 to 44, inclusive, were all rejected by the examiner for the reason that they either included details of a vehicle drive that had no patentable cooperation with the grading mechanism of the device or that they included details of both the grading mechanism and the vehicle drive, which details do not patentably cooperate with the grading mechansim. The examiner was of opinion that any true combination of elements in the claims before him are old, as disclosed by the Adams No. 201 reference, the Wilson et al. or the Wells et al. patents, all of which provide for a motor grader with suitable grading mechanism adjustably carried by a self-propelled steerable traction vehicle. In that respect the examiner stated: "A motor grader is essentially a powerful traction vehicle carrying adjustable grading mechanism. Where, as in this case, the novelty appears to reside purely in improvement in the traction vehicle, it should be so claimed. The fact that appellicant's device may perhaps operate better

as a grader than do the prior art devices, arises solely from the fact that he has improved the traction vehicle, not from any new and patentable cooperation of the vehicle with the grading mechanism carried thereby."

The examiner rejected claims 1 to 5, inclusive, 7, 13, 14, 19, 37, 40, and 44 as unpatentable over the Wilson et al. reference in view of any one of the Adams, Eisner, Lee et al. or Norton patents. He, in our opinion, properly stated that those claims merely set out the broad notion of providing separate motors for the driving wheels of the device of the Wilson et al. patent, as taught by each of the secondary references.

Claims 1 to 5, inclusive, 7, 13, 14, 19 and 44 were also rejected as unpatentable over any one of the patents to Adams, Eisner or Norton in view of the Kerber or Dean patents. The examiner stated that those claims merely have the requirement of providing road grading equipment, such as appears in the devices of the Kerber or Dean patents, and mounted upon a self-propelled vehicle, such as is shown by the Adams, Eisner or Norton patents, instead of vehicles which are shown in the Kerber and Dean patents.

Claim 6 was rejected by the examiner as unpatentable over the Adams No. 201 reference, particularly in view of the patent to Wilson et al. That claim merely provides for steering and driving all four wheels of a grader. It is clear that the Wilson et al. patent shows the desirability of both steering and driving all four wheels of a motor grader, and such arrangement of wheels on the device of the Adams patent does not call for the exercise of the inventive faculty, for the reason that it would be obvious to make such an arrangement if so desired.

Claims 15, 16, 36, 38, 39, 41, 42 and 43 were rejected as unpatentable over the Wilson et al. patent in view of any one of the Adams, Eisner or Norton patents and further in view of the Wells et al. patent and the Adams No. 201 reference. The examiner pointed out that those claims differ from the device of the Wilson et al. patent in that they require the wheels to be leanable as well as driven and steerable, and

that in most of those claims individual motors are employed. The examiner held that providing for individual hydraulic motors mounted on the stub axles of the structure shown in the Wilson et al. patent was obvious and an "unpatentable expedient as clearly taught by Adams, Eisner or Norton."

It was held to be old in the art to provide for the leaning of road grader wheels. That holding seems to us to be proper. In the Adams No. 201 reference it is shown that the front wheels are both leanable and steerable and that that is the usual arrangement of steerable stub axles mounted on brackets which are tiltable about longitudinal axes adjacent the steering wheels. The examiner stated, and it is not contradicted, that that type of mounting for leanable and steerable wheels was well known in the grader art and used on most modern graders.

Claims 21 and 24, inclusive, were further rejected as unpatentable over either the Wilson et al. or the Wells et al. patents in view of the Adams, Eisner, Norton and Lee patents. Those claims contain an additional limitation of individual motors, one for each of the driving wheels. The examiner held that the substitution of motors of the type shown in the patents of Adams, Eisner, Norton and Lee for those in the devices of the Wilson et al. or the Wells et al. devices would not involve invention, and the additional limitation in those claims that there is reduction gearing between each wheel and the motor it drives would be obvious to one skilled in the art, as shown in the device of the Lee et al. patent, which is for exactly the same purpose, i. e., "that of connecting an individual, stub-axle-mounted, motor to the associated drive wheel of a vehicle."

Claims 4, 5 and 23 were further rejected by the examiner as unpatentable over the Adams No. 201 reference in view of any one of the patents of Adams, Eisner, Norton or Lee. He was of opinion that the use of individual wheel motors as means for driving the rear wheels of the Adams 201 grader, either directly—as in the Adams (patent), Eisner and Norton devices—or through suitable reduction gearing—as

shown in the Lee et al. patent—did not involve invention, for the reason that the substitution of the hydraulic motors of the application for the individual electric motors shown in the structure of Lee et al. would fully meet those claims.

The examiner of Division No. 47 noted that claims 25, 26 and 29 to 32, inclusive, pertain to the mounting of steering, leaning motor-carrying-wheels or motor means for driving steerable, leanable wheels of a road grader or other leanable chassis. He noted that there are examples in the prior art for four driven wheeled vehicles, in which invention resides in the mounting of traction wheels so that they could be steered or leaned as well as being power supplied. In that connection he cited the patents to Brinton, Pfouts and Wells et al. The vehicles of those patents are of the stub-axle driven steering wheel type, in which all four wheels are driven. Each wheel in the devices of the Brinton and Pfouts patents has an individual electric motor drive, although in the latter patent only two wheels are steerable. The device of Wells et al. shows that all four wheels are driven by a single internal combustion engine through two shafts having universal joints leading to front and rear axles with fitted differentials. The front wheels of the vehicle are steerable, and the rear wheels are not steerable, but leanable. The structure disclosed in appellant's application provides for the mounting of each wheel so as to permit a limited universal pivotal movement instead of a single pivotal movement, and it seems to us that the examiner properly held that any invention to be found in claims 25, 26 and 29 to 32, inclusive, must be in the wheel mounting means or the new combination of wheel mounting in a road grader, which was shown in the claims examined in Division 4.

With respect to claims 33 to 35, inclusive, it would appear that if any invention is to be found therein that it would reside in the interconnection of the motors of the four individually driven wheels of the vehicle by means of which one front and one rear wheel on opposite sides of the device are driven in synchronism, while the other front wheel and the other rear wheel are

also driven in synchronism. Thus when power is applied, should either one of the wheels or both of the wheels on one side of the device encounter difficult traction, such as caused by mud or ice, the diagonally opposite wheel would be positively driven so that more traction would be obtained on the clear side.

In our opinion it was properly held that the claims of the group, 25, 26 and 29 to 32, inclusive, and the group, 33, 34 and 35, are to separate and distinct inventions, and therefore the requirement for division between them was without error.

Claims 25, 26 and 29 to 32, inclusive, were rejected as being unpatentable over the Adams No 201 reference, in view of the Adams or the Ledwinka patents. The Adams No. 201 reference contains pictures of an engine propelled grader provided with leanable steering front wheels. While that reference does not disclose the front wheels to be individually motor driven, as called for in claims 25, 29 and 31, or as traction wheels, as set out in claims 26, 30 and 32, it was held by the examiner that providing driving means for each of the front wheels of the device in the Adams No. 201 reference would not be inventive over the teachings of the Adams or the Ledwinka patents. It was held that those claims merely showed the idea of applying power to steering, leaning wheels, such as is shown in the Adams No. 201 reference or the patent to Ledwinka, by means old in the motor vehicle art. It would merely require redesigning of the stub-axles of the Adams grader to receive motorized wheels disclosed in the Adams or the Ledwinka patents.

In view of our conclusion, it is not necessary to discuss further rejection of the various claims by the examiner of Division 47.

The Board of Appeals in affirming the decisions of the primary examiners agreed with the reasoning contained therein.

We agree with the tribunals below that the claims considered in Division 4 were properly rejected on the ground of lack of patentable coaction between the elements thereof. It appears to us that the combination of a self-propelled, steerable road machine with adjustably mounted

grading mechanism must be considered to be old in the light of the prior art hereinbefore discussed. Those claims describe the combination clearly shown in the prior art and additionally provide for details of the driving system of the device, and some of the claims further include details of the grader structure. The principle announced in the case of Lincoln Engineering Co. v. Stewart Warner Corp., 303 U.S. 545, 58 S. Ct. 662, 664, 82 L.Ed. 1008, is applicable here. There it was stated, "the improvement of one part of an old combustion gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." We see no unexpected coaction between the grader structure and the vehicle propeller means defined by those claims.

We can not agree with the statement of appellant in his brief that the tribunals of the Patent Office admitted that the device of appellant operates better as a grader than prior art devices. All the tribunals of the Patent Office stated was that appellant's device *may* operate better. Such statement, as to the possible comparative advantages of appellant's device, to our way of thinking, is that even if assuming that the grader of the application operates in better fashion than those known to the prior art, such advantage would of necessity be attributable to the improved vehicle driving means, but certainly not to the conventional grader structure, as defined by the claims.

We agree there was no error in rejecting claims 1 to 7, inclusive, 9, 12 to 15, inclusive, 17, 19, 21 to 24, inclusive and 36 to 44, inclusive, on the ground of lack of patentable coaction between the elements thereof. Therefore it is not necessary to discuss the further rejection of those claims, as being unpatentable over the prior art.

We are of opinion that claims 33, 34 and 35 were properly rejected by the Primary Examiner of Division 47 on the ground of misjoinder of invention. Those claims were required to be divided from claims 25, 26 and 29 to 32, inclusive, as hereinbefore mentioned, and appellant elected to prosecute claims 25, 26 and 29 to 32, inclusive, in the event that requirement for division was

sustained. The only issue to be considered with respect to claims 33, 34 and 35 is whether the requirement for division was proper.

■ That requirement for division between claims 33, 34 and 35 and claims 25, 26 and 29 to 32, inclusive, was proper. The latter group relates to a construction designed to accomplish the leaning of motor driven wheels of a vehicle, while the former group is not concerned with the leaning feature of the wheels, but is directed to a system for the supplying of power to the wheel motors. It appears to us, as was pointed out in the brief for the Commissioner of Patents, that it is immaterial how power is supplied to the motors in so far as the structure of the latter group is concerned, and just as immaterial with respect to the former group as to whether or not the wheels are leanable. The two groups relate to distinct and independent fields of invention.

It is vigorously contended by appellant that the requirement for division should have included all of the claims of the application. We can not, in view of the facts herein, agree that he was injured by the division required in the Patent Office. Surely he can not complain if he was allowed to retain several other claims in addition to those in the group which he elected to prosecute. Some claims of the application relate to two alleged independent inventions, and the other claims include both. We can not see that the mere presence of such inclusive claims, retainable in connection with either electable group when division is required, results in a detriment to appellant. The presence of such claims can not negative the requirement for division.

■ Claims 25, 26 and 29 to 32, inclusive, each held to be unpatentable over the prior art, were rejected on various combinations of references. Those combinations are the same or similar to those already referred to herein, and in our opinion were proper.

We think it is obvious that, if any competent engineer, familiar with the art of road grading machines, had been told by appellant what he desired to accomplish, the public knowledge of the prior art would enable him immediately to arrive at a construction such as is disclosed in the present application and defined by the involved claims.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.