**Albert MAESCHER, d/b/a Crown Manufacturing Company, Plaintiff,**

v.

**RELIANCE MANUFACTURING COMPANY, Defendant.**

**No. IP 54-C-57.**

United States District Court
S. D. Indiana, Indianapolis Division.

June 29, 1956.

Jack E. Dominik and Ooms & Dominik, Chicago, Ill., and Justak & Justak, Indianapolis, Ind., for plaintiff.

Albin C. Ahlberg and Ahlberg, Wupper & Gradolph, Chicago, Ill., and Schley, Trask & Jenkins, Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

The above entitled cause came on regularly for trial and the court having duly considered the evidence and the trial briefs of the parties and being fully advised in the premises, now finds the following:

Findings of Fact

1. This is an action for infringement of United States Letters Patent No. 2,215,010 granted to Crown Manufacturing Company, a Missouri corporation of St. Louis, Missouri, on September 17, 1940, for Pressing Apparatus, on an application filed by Albert Maescher on October 25, 1937.

2. Claims 4 and 5 are charged to be infringed by the defendant's use, at Seymour, Indiana, of twelve progressive ironing units made by defendant after two units in its possession were purchased by Alperin-Strauss Company from Union Special Machine Company in 1939. Plaintiff also charged infringement in the use of a number of other units, estimated to be from four to six, at defendant's Loogootee, Indiana plant. The evidence in respect to infringement at the Loogootee location is lacking in sufficiency to establish by a fair preponderance of the evidence any infringement at that location. The court therefore finds no infringement at the defendant's Loogootee plant.

3. Defendant denies that plaintiff, Albert Maescher, is the owner of the patent in suit and avers that the patent is invalid. Defendant also denies that plaintiff is entitled to any damages because of failure properly to mark the equipment made and sold under the patent, and because plaintiff failed to prove any damages.

4. Crown Manufacturing Company was the owner of the patent in suit when it issued in 1940. The corporation was dissolved by action of the stockholders on March 30, 1942. The minutes of the meeting of dissolution recorded the intention of the stockholders to distribute all of the corporation's assets to the stockholders; but, to provide for the disposition of any assets subsequently discovered, a trustee was appointed for the benefit of the stockholders. The patent was not mentioned specifically at the time of the dissolution and three of the stockholders, namely, Albert Maescher, Jr. and Carl and Jeanne Mitze, failed to join in a certain agreement, Plain-

tiff's Exhibit 7, purporting to turn over to certain stockholders all of the corporation's assets except certain cash and notes mentioned in said agreement. The inconsistency between the agreement, Plaintiff's Exhibit 7, and the action appointing a trustee, for the benefit of stockholders, was not explained, nor has any assignment to plaintiff been shown.

5. The claims submitted with the application for the patent in suit were eighteen in number and included process claims and broad claims as well as narrower ones. They were rejected for want of patentable novelty and upon references cited by the Patent Office Examiner.

After various amendments and a personal interview by the applicant with the Patent Office Examiner, the patent was finally allowed with limited claims.

6. Claims 4 and 5 here in issue both include spaced rotary drums, an endless flexible belt conveyor, and a plurality of flexible pads thereon secured to the conveyor, with the pads being resiliently connected together at their ends. These claims constitute the heart of the patent.

7. Defendant set up in its answer or gave the required notice of the following prior art patents against the validity of the patent in suit.

| | | |
|---|---|---|
| Gear | 227,163 | May 4, 1880 |
| Bradley | 233,195 | October 12, 1880 |
| Stiles | 251,483 | December 27, 1881 |
| Newell | 369,023 | August 30, 1887 |
| Olson* | 469,170 | February 16, 1892 |
| Carlson | 755,451 | March 22, 1904 |
| Abraham | 799,771 | September 19, 1905 |
| Graney | 912,116 | February 9, 1909 |
| Roberton | 1,176,245 | March 21, 1916 |
| Drew* | 1,273,750 | July 23, 1918 |
| Kenneck | 1,354,493 | October 5, 1920 |
| Wiggins | 1,438,566 | December 12, 1922 |
| Braun | 1,604,217 | October 26, 1926 |
| Dawn* | 1,624,829 | April 12, 1927 |
| Johnson* | 1,763,359 | June 10, 1930 |
| Rosebrook* | 1,787,763 | January 6, 1931 |
| Poser | 1,789,282 | January 13, 1931 |
| Zonino* | 1,825,379 | September 29, 1931 |
| Frost* | 1,863,557 | June 21, 1932 |
| Warcam* | 1,871,436 | August 16, 1932 |
| Johnson* | 1,896,518 | February 7, 1933 |
| Green* | 1,928,934 | October 3, 1933 |
| McGowan | 1,942,254 | January 2, 1934 |
| Hansson | 2,108,486 | February 15, 1938 |

8. The prior art patents relied upon by defendant show conveyors of various types for performing various work operations including ironing of garments. They disclose all of the individual elements used by Mr. Maescher and they are admitted by Mr. Maescher to have been

old at the time of his alleged invention. Reliance Manufacturing Company claims to have built, and the court finds that there was in use in 1936 by Rice-Stix, Inc., prior to the filing date of the application for the patent in suit on October 25, 1937, an ironing unit built by defend-

* References cited in file history of Maescher Patent 2,215,010, and also set up by statutory notice the prior use of progressive ironing units by defendant and Rice-Stix, Inc. as proof of prior invention of the subject matter of the patent in suit.

ant comprising drums and an endless belt for ironing shirts. Also Rice-Stix, Inc. of St. Louis, Missouri, before October 25, 1937, built two ironing units each having an endless belt traveling over a pair of drums, and the same was used for ironing shirts prior to the filing date of the application for the patent in suit. Neither the unit first above referred to, which was sold to Prodexto Corporation of Terre Haute, Indiana, and by it to Rice-Stix, Inc. in 1936, nor the two Rice-Stix 1937 units were provided with a plurality of pads secured to the conveyor belt, nor were such pads connected to each other by springs; but the court finds as a matter of fact that securing pads to an endless belt and connecting the pads by means of springs was a matter of ordinary mechanical skill. Plaintiff claims to have made the alleged invention of the patent in suit before the application for patent was filed, but produced no documentary evidence in support of such claims, although admitting that he had sketches in his possession not produced at the trial. He is, therefore, limited to his filing date.

9. Plaintiff claims commercial success as evidence of patentable invention. The record shows that there was a total of about one hundred ironing units sold, most of them prior to 1942, by Crown Manufacturing Company. The first one was sold in 1937; the best year was 1940; the next best, 1939; the next best, 1938; no units were made in 1942, 1943 or 1944, due to the second world war, and there is no record of any sold since then. There was no particular success attributed to the glued on, spring-held pads claimed in the patent. Such pads merely provided five separate work stations for the operators. Defendant, through its own witness and cross-examination of plaintiff, showed that many of the advantages of the ironing unit were attributable to the thirteen or more features of the equipment such as end tables, electric irons, iron stands, pin holders, tissue paper holders, cardboard holders, collar block slides, sprays, and other items described in the circular, Plaintiff's Exhibit 9, none of which items were covered by the patent.

10. During the pendency of the application for the patent in suit, that is, between 1937 and 1940, machines sold by Crown Manufacturing Company were marked with a brass plate reading in part "Patent Pending." After the patent issued on September 17, 1940, the same brass plates continued to be used with the addition of the numerals "2,215,010." Written notice of infringement was given to defendant in January 1954. The equipment charged to infringe was sold by defendant in October 1953 and there is no testimony that defendant continued to use progressive ironing units thereafter. This suit was filed December 1, 1954. There is nothing in the record to show that defendant knew of the patent before that date.

11. Plaintiff claimed damages on the basis of a reasonable royalty for the use of the patented invention. Plaintiff admitted that he had books of account but they were not produced at the trial. Likewise, none of the books and records of the defendant were produced and there is no direct evidence before the court which establishes the actual savings derived from the use of the progressive ironing units in defendant's operations. The court did, however, admit evidence of purported savings in direct labor costs and in the training of personnel as experienced by another shirt manufacturer. Such evidence, however, is inconclusive as to any savings enjoyed by defendant in the use of progressive ironing units and at most could serve only as the basis for a guess on the part of the court. Plaintiff gave costs and selling prices for its machines ranging over a long period of time but the information obtained in this regard is insufficient for the determination by the court of what, if any, profit plaintiff would have made if he had sold the units in question to defendant. In this regard the court would be required to speculate as to the damages sustained by the plaintiff. There was no testimony as to the cost or selling price of the conveyor belt

■■■■■■■■■ **577**

and its associated pads and springs apart from the other features of the progressive ironing unit. Plaintiff produced no competent expert testimony on the subject of reasonable royalty and the proof adduced by defendant was sufficient to show that most, if not all, of the advantages due to the use of progressive ironing units were attributable to unpatented features.

### Conclusions of Law

From the foregoing facts the court concludes:

1. This court has jurisdiction over the parties and the subject matter.

2. The patent in suit, No. 2,215,010, was issued on its face to Crown Manufacturing Company of St. Louis, Missouri, a Missouri corporation, as assignee of Albert Maescher.

■ 3. Plaintiff failed in his burden of proving his claim that he is the owner of the patent or the causes of action herein; and the complaint as amended must, therefore, be dismissed as to Counts I and II thereof.

■ 4. The prior art patents preclude patentable novelty in the Maescher patent in suit and the plaintiff admits that all of the individual elements of the combinations of claims 4 and 5 of the patent were old long prior to the time of his alleged invention. Maescher's contribution, if any, in providing glued on, spring held pads, amounted to mechanical skill only and did not rise to the level of patentable invention. The claims are, therefore, invalid. The claims in suit are invalid for the further reason that Maescher's contribution, if any, did not amount to patentable invention over and above the progressive ironing units made by Reliance Manufacturing Company and Rice-Stix, Inc. as shown in Defendant's Exhibits 5 and 6, respectively, prior to the filing date of the application for the patent in suit on October 25, 1937. The claims seek to cover an old combination, and the claims in suit are invalid under the rule expressed in Lincoln Engineering Co. of Illinois **v.** Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L. Ed. 1008.

■ 5. Progressive ironing units embodying the alleged patented invention were never marked in accordance with the patent statute, and written notice of infringement was not given to defendant until January 1954. Even if plaintiff were the owner of the patent and it was sustained and held infringed, no recovery of damages could be had because of plaintiff's failure to mark and give notice of infringement.

6. Plaintiff failed to sustain the burden required in order to collect damages.

7. The complaint as amended is dismissed with costs to defendant.